UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE and JOHN DOE, individually and as parents and next friends of DOE CHILD, and DOE CHILD,<br><br>       Plaintiffs,<br><br>v.<br><br>DEBORAH HOLLY, DEBORAH BRESNICK, individually and in her capacity as assistant principal of the Green Meadow School; DONNA DANKNER, individually and in her official capacity as principal of the Green Meadow School; ROBERT J. GERARDI, individually and in his official capacity as Superintendent of the Maynard Public Schools; and TOWN OF MAYNARD,<br><br>       Defendants. | Civil No. 20-10139-LTS |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 56, 58) AND MOTION
TO STRIKE (DOC. NO. 77)

February 25, 2022

SOROKIN, J.

On October 4, 2019, Plaintiffs[1] filed suit against various individuals[2] and the Town of

Maynard ("Maynard") for several alleged violations of state and federal law arising from the

alleged bullying of Doe Child in her second grade.[3]  Doc. No. 1-2.  Maynard moved for

---

[1] To preserve anonymity, the child shall be referred to as "Doe Child" and her parents as "Jane Doe" and "John Doe."

[2] The individual Defendants include teacher Deborah Holly, Assistant Principal Deborah Bresnick, Principal Donna Dankner, and Superintendent Robert J. Gerardi.  Doc. No. 1-2.

[3] Insofar as Plaintiffs further factual allegations occurring before October 4, 2016, i.e., those primarily from Doe Child's first-grade year, the Court does not consider such allegations as capable of giving rise to liability as they are barred by the statute of limitations.  Plaintiffs filed their Complaint on October 4, 2019, id., and the relevant statute of limitations period is three

summary judgment (Doc. No. 56) as did the individual Defendants (Doc. No. 58), and Plaintiffs

oppose both motions (Doc. No. 68).  Defendants also moved to strike (Doc. No. 77) Doe Child's

affidavit.  Plaintiffs have not responded to this Motion to Strike.

The Court has carefully reviewed the parties' submissions and arguments and applied the

familiar summary judgment standard, drawing all reasonable inferences and resolving disputes of

genuine material fact in favor of the Plaintiffs as the non-moving party.  For the reasons that

follow, the Court ALLOWS Maynard's Motion for Summary Judgment (Doc. No. 56) as well as

the individual Defendants' Motion for Summary Judgment (Doc. No. 58) resulting in judgment

in favor of all Defendants on all claims except as to Plaintiffs' claim against Maynard for

negligence as to the investigations which is REMANDED WITHOUT PREJUDICE for lack of

subject matter jurisdiction.  The Court also ALLOWS Defendants' Motion to Strike (Doc. No.

77).

I.   FACTUAL BACKGROUND[4]

Plaintiffs Jane Doe, John Doe, and Doe Child are of Ukrainian origin or descent.  Doc.

No. 60 ¶¶ 1-5.  Defendant Deborah Holly is a second-grade teacher at the Green Meadow

---

years for the remaining claims at issue.  Mass. Gen. Laws ch. 260, §§ 2A, 5B.  The Court
nonetheless considers that evidence to the extent relevant.
[4] Defendants submit a Joint Statement of Material Facts ("Defendants' SOF").  Doc. No. 60.
Plaintiffs do not respond to Defendants' SOF, instead submitting only their own Statement of
Facts (Doc. No. 70) which does not correspond to the numbered paragraphs in Defendants' SOF.
Although Defendants request the Court admit the entirety of their SOF because of Plaintiffs'
failure to respond, the Court declines to do so on this basis because the Local Rules do not
explicitly require a response from the non-moving party to the moving party's SOF, and instead
only require that Oppositions "include a concise statement of the material facts of record as to
which it is contended that there exists a genuine issue to be tried, with page references to
affidavits, depositions and other documentation."  L.R. 56.1.  This Plaintiffs have arguably done
though not either in the conventional or most helpful manner.  That said, to the extent certain
statements are not controverted by Plaintiffs' SOF or the admissible evidence in the record, the
Court deems those facts admitted.

Elementary School in the Town of Maynard, Deborah Bresnick is the former Vice Principal of Green Meadow, Donna Dankner is the former Principal of Green Meadow, and Robert Girardi is the former Superintendent of Maynard Public Schools. Id. ¶¶ 6-9.   Holly was Doe Child's second-grade teacher in the 2016-2017 school year. Id. ¶¶ 28-29. Prior to the underlying events at issue in this case, Plaintiffs and Defendants had a generally amicable relationship. Id. ¶¶ 20-26 (describing the many instances of praise Jane Doe communicated to Holly and other school officials).

Beginning in January 2017, Doe Child had occasional negative interactions with other students, with the Defendants characterizing Doe Child both as the victim and aggressor.[5] Id. ¶¶ 39-40.  Though Plaintiffs mostly describe the events as "bullying" without further specification, certain facts are clear and undisputed.  There are no allegations or evidence of physical misconduct by any adult or school official.  The "bullying" described in the record generally consists of events in the nature of a second-grade child touching, pushing, shoving, or name-calling another second-grade child.[6]  See, e.g., Doc. No. 70 ¶ 19.  There are no allegations of racial, sexual, religious or other equivalent epithets of any type by anyone in the record.  Further details are provided as necessary below.

On April 13, 2017, Holly emailed Jane Doe to inform her that Doe Child was taunting another classmate and that she intended to have Doe Child write a letter of apology. Id. ¶ 47. Jane Doe refused.  Doc. No. 60 ¶¶ 39-40.  The next day on April 14, 2017, Jane Doe sent an

---

[5] Plaintiffs dispute that Doe Child initiated any bullying herself.

[6] Plaintiffs additionally describe a physical incident where a student slapped Doe Child.  Doc. No. 70 ¶¶ 16, 42.  School officials concluded that the student did in fact slap Doe Child but did so out of silliness and in response to Doe Child invading the student's personal space.  Doc. No. 71-24.  A school official had them both apologize to each other.  Id.  Plaintiffs deny that Doe Child invaded the student's personal space.  Id.

3

email to many of the individual Defendants describing the bullying Doe Child was facing and

expressing "dissatisfaction on how bullying issues towards" her daughter had been handled, who

she felt like students and staff were targeting.  Doc. No. 60-14; see Doc. No. 70 ¶ 7.  Jane Doe's

email describes an instance the prior winter when "a boy" was "rummaging" through Doe

Child's backpack on the bus without permission; an instance in which a different boy "kept

hitting [Doe Child] multiple times while waiting for the bus"; another instance in which a boy

"kept calling [Doe Child] meanie" and two instances in which teachers sought apologies from

Doe Child for her behavior but no apology from two other children for similar behavior.  Doc.

No. 71-28 (asking "[m]y question: where is the apology note written by [another student] and did

her parents sign at least one behavior form for bullying [Doe Child]?").

     In May of 2017, Doe Child's second grade class went on field trip during which

Defendants claim Doe Child pushed another student into the pool after being provoked,[7] and

Holly put them both in a "time-out."  Doc. No. 60 ¶¶ 57-58.  Later, Jane Doe emailed Holly

about the pool incident, and Plaintiffs allege Holly subsequently read the email aloud to Doe

Child's second grade class and mocked Plaintiffs.  Doc. No. 70 ¶¶ 35-38 (alleging that Holly said

"Oh my God! Your mother sent me an email again! Now what do you think you are going to tell

her after you come home? That you are God and the rest of people are bad?!").  Defendants

dispute that Holly read the email aloud or mocked Plaintiffs to the class.  Doc. No. 60 ¶¶ 62-66.

---

[7] Plaintiffs describe that the other student "jumped on [Doe Child] from behind and started choking" her, and Doe Child "reflexively defended herself by pushing" the student.  Doc. No. 70 ¶ 32.  School officials agree that some physical provocation occurred in that the other student grabbed Doe Child by the neck to get her attention and accordingly the school placed them both in time out after deeming it was "typical pushing and shoving among classmates."  Doc. No. 60 ¶¶ 58-59.  This other student and Doe Child are "playmates" according to Plaintiffs but also were "two of the most challenging students for behavior control" in Holly's classroom according to Defendants.  Id. ¶¶ 41, 60.

Jane Doe eventually sought a Safety Plan to place Doe Child in a small classroom, which school officials deemed inappropriate since that classroom was for developmentally disabled students.  Id. ¶ 68.  On May 29, 2017, Principal Dankner proposed a new Safety Plan which included a staff member accompanying Doe Child throughout the day as a "safe person" to monitor interactions and specified that the school would conduct a comprehensive investigation into the bullying concerns raised by Jane Doe.[8]  Doc. No. 60-15.  Plaintiffs rejected this plan for various reasons.  Doc. No. 60 ¶ 73; Doc. No. 70 ¶ 81.  Throughout this period, Jane Doe had pulled Doe Child out of school, and so the school offered a home tutor.[9]  Doc. No. 60 ¶ 74.

The school conducted its investigation, and Plaintiffs refused to participate in it.  Id. ¶¶ 80-83; Doc. No. 71-41.  As part of the investigation, Principal Dankner talked to witnesses and wrote a report finding no evidence of bullying of Doe Child.  Doc. No. 60-16.  After this report, the Assistant Superintendent conducted a further investigation confirming the findings of Dankner's report for the 2016-2017 school year.  Doc. No. 60-17.  Plaintiffs allege the investigations "fail[ed] to examine the evidence that had been provided" by them.  Doc. No. 70 ¶ 68.  The Court sets out further facts as necessary in the course of discussing the individual issues.

---

[8] Plaintiffs take issue that a Safety Plan was not implemented immediately as Superintendent Gerardi stated that it "makes sense . . . to complete the investigation before providing an in-school safety plan" in an email on May 25, 2017 which was allegedly contrary to the Maynard Public Schools Bullying Prevention and Intervention Plan.  Doc. No. 71-18.  Even so, Plaintiffs have not explained the significance of Maynard providing a Safety Plan just four days after commencing the investigation to the claims at issue here and agree themselves that the plan was "to support Doe Child's return to school while the bullying investigation was in progress."  Doc. No. 69 ¶ 56.

[9] The parties dispute the circumstances around the tutoring, with Defendants stating that "Plaintiffs only used the tutor for approximately 3 times and then Plaintiff Jane Doe decided to allow the Doe Child to be done with school for the summer," Doc. No. 60 ¶ 74-75, whereas Plaintiffs state that the school "issued the referral for only three (3) days of tutoring[.]"  Doc. No. 70 ¶ 63. The Court, of course, accepts Plaintiffs' version of this dispute.

II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to [] view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III.   MAYNARD'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 56)

A. Counts I and II

In Count I, Plaintiffs allege a violation of the federal Equal Protection Clause through discrimination based on national origin and deliberate indifference to Doe Child's federal rights. Doc. No. 1-2 ¶¶ 56-59. In Count II, Plaintiffs allege a similar violation under state law. Id. ¶¶ 60-63. The Plaintiffs, however, waived Counts I and II by not responding to Defendants' arguments as to those counts and instructing the Court to focus elsewhere. Doc. No. 69 at 21

("Defendants . . . focus mostly on the national origin discrimination claims, of counts one and two (one federal and one state law claim). However, the crux of Plaintiffs' complaint against the Defendants is contained in counts three through six."). As the First Circuit has described, "the failure to put forth any argument in [Plaintiffs'] opposition to defendant's motion for summary judgment . . . constitutes abandonment of any such claim[s]." Montany v. Univ. of New England, 858 F.3d 34, 41 (1st Cir. 2017). Accordingly, the Court ALLOWS Maynard's Motion for Summary Judgment (Doc. No. 56) on Counts I and II because of the (1) knowing waiver and (2) undisputed evidence establishing no basis for a reasonable jury to conclude that Defendants discriminated on the basis of national origin.[10]

   B. Count III

The Court now turns to the remaining state law claims contained in the Complaint (Doc. No. 1-2). Although these claims are not entirely abandoned, Plaintiffs' arguments in support of them are cursory with conclusory legal statements that restate the claims nearly verbatim to their descriptions in the Complaint (Doc. No. 1-2). See Velez-Velez v. Puerto Rico Highway & Transp. Auth., 795 F.3d 230, 238 (1st Cir. 2015) (describing that plaintiff waived a claim when she responded to defendant's argument in a one-sentence cursory statement). Plaintiffs for the most part do not respond to Defendants' arguments raised in their respective Motions for

---

[10] Count I was the only federal claim Plaintiffs pled, thereby giving this Court subject matter jurisdiction over this case since there is no diversity jurisdiction here. Doc. No. 1-2. Defendants request the Court decline to exercise supplemental jurisdiction on the remaining state law claims if the Court dismissed the federal claim. Doc. No. 57 at 12 n.3. Plaintiffs do not respond or address this argument in their Opposition. Doc. No. 68. Despite Plaintiffs' failure to respond, the Court nonetheless exercises supplemental jurisdiction over the remaining state claims given that the parties completed discovery and briefed summary judgment as to every claim. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). That said, the Court does decline to exercise supplemental jurisdiction over Count IV only insofar as it argues negligence with respect to the investigations Maynard conducted for the reasons explained infra. The Court proceeds accordingly.

Summary Judgment (Doc. Nos. 56, 58).  Nonetheless, the Court proceeds in its analysis to consider the remaining claims in the context of the limited arguments presented.

In Count III, Plaintiffs argue that Defendants "violated Plaintiffs' rights under the Massachusetts Constitution, and the Massachusetts Civil Rights Act . . . by threats, intimidation or coercion" or by attempts to do so and denied Doe Child "the right to education" in violation of the Massachusetts statute prohibiting discrimination in education, Mass. Gen. Laws ch. 76, § 5. Doc. No. 1-2 ¶¶ 64-67.  As to the Massachusetts Civil Rights Act ("MCRA"), Maynard argues that it is not a "person" subject to the statute.  Doc. No. 57 at 14-15.  The Court agrees. Municipalities are not "persons" covered by the MCRA as determined by the Massachusetts Appeals Court, and so any claims under the MCRA against Maynard fail.  Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 592 (2001).

As to the Massachusetts statute prohibiting discrimination in education, even assuming, without deciding, that Plaintiffs substantively have a viable claim, they nonetheless have not demonstrated that they made an application to the Maynard School Committee and received a written statement of reasons prior to bringing this litigation as required by Massachusetts law. See Mass. Gen. Laws ch. 76, § 5 (describing that plaintiffs seeking relief under this provision "shall on application be furnished by the school committee with a written statement of the reasons therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover"); Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 353 (D. Mass. 2016).  Plaintiffs allege nowhere that they "sought redress with the school committee" about Doe Child's bullying, nor do they respond to Defendants' exhaustion argument.  Harrington, 172 F. Supp. 3d at 353. Even if Plaintiffs had exhausted by notifying the Maynard school committee, the "claim would likely be barred by § 10(j)" to the extent it alleges that Maynard failed to remedy the peer-to-peer

bullying Doe Child experienced.  See id. (citing Doe v. D'Agostino, 367 F. Supp. 2d 157, 178 (D. Mass. 2005)) (recognizing that "[a] claim that a student's 'ability to maximize his public education' was limited 'by the School's negligent failure to take action to remedy the harmful conduct of third parties . . . is precisely the type of claim from which the Legislature intended to immunize public entities pursuant to Mass. Gen. Laws ch. 258, § 10(j)'").  Accordingly, Maynard's Motion for Summary Judgment (Doc. No. 56) is ALLOWED as to Count III.

C. Counts IV and V

In Count IV, Plaintiffs allege that Defendants "violated their duties, under the Anti-Bullying Law, Mass. Gen. Laws ch. 71, § 37O[,] through failing to provide proper training, hiring, supervision, and maintenance of employees" which led to a failure to provide Doe Child with a safe environment.  Doc. No. 1-2 ¶ 69.  Additionally, Plaintiffs allege "Defendants breached their duty . . . to adequately investigate and remedy violations once reported to them" under the Anti-Bullying Law.  Id.  In Count V, Plaintiffs bring a negligence claim arising from Maynard's alleged failure to prevent harm by violating duties arising under the Anti-Bullying Law.  Id. ¶¶ 73-75.

Insofar as Counts IV and V allege violations of the Anti-Bullying Law itself, such allegations are barred because the Anti-Bullying Law provides that "[n]othing in this section shall supersede or replace existing rights or remedies under any other general or special law, nor shall this section create a private right of action."  Mass. Gen. Laws ch. 71, § 37O(i) (emphasis added).  In doing so, the Massachusetts Legislature expressly declined to create a private right of action.  Without this private right of action, there can be no standalone claim under this statute.

Insofar as Counts IV and V allege that Defendants were negligent by breaching duties created by the Anti-Bulling Law, Plaintiffs' claims still fail under the Massachusetts Tort Claims

Act ("MTCA").  By passing the MTCA the Massachusetts Legislature waived some aspects of its sovereign immunity but simultaneously retained immunity in certain situations.  One provision of the MTCA "immunizes a public employer from 'any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer.'"  Pettengill v. Curtis, 584 F. Supp. 2d 348, 366 (D. Mass. 2008) (quoting Mass. Gen. Laws ch. 258, § 10(j)).  "A public employer only causes a condition or situation by an affirmative act that 'materially contributed to creating the specific condition or situation that resulted in the harm.'"  Id. (quoting Kent v. Commonwealth, 437 Mass. 312, 319 (2002)).  As a result, to avoid invoking sovereign immunity under this provision of the MTCA, Plaintiffs must demonstrate both that Maynard (1) materially contributed to creating the harmful situations or conditions at issue (2) through an affirmative act.

    In Count IV, Plaintiffs claim that Defendants "fail[ed] to provide proper training, hiring, supervision and maintenance of employees[.]"  Doc. No. 1-2 ¶ 69.  Many courts have found that claims of negligent training or supervision are not affirmative acts and are therefore not viable under § 10(j) because they are "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance."  Pettengill, 584 F. Supp. 2d at 366 (quoting Armstrong v. Lamy, 938 F.Supp. 1018, 1044 (D. Mass. 1996)).[11]  And although claims

---

[11] Although another session of this Court suggested that even negligent supervision and training can be affirmative acts in some situations, see LaPierre v. City of Lawrence, the Court need not decide this issue definitively for the purposes of this case.  No. CIV.A. 11-12039-RWZ, 2013 WL 1829120, at *4 (D. Mass. May 1, 2013).  Even assuming LaPierre is correct, Maynard states, with record citations, that it "regularly trained its employees on bullying prevention, which it deemed very important," and it had "comprehensive bullying prevention policies in place."  Doc. No. 60 ¶¶ 10-13, 16-19.  Plaintiffs do not respond or rebut these assertions or provide any other evidence to suggest Maynard negligently trained and supervised its employees.  Accordingly, the

of negligent hiring can count as affirmative acts under the law, see id., Plaintiffs have not furnished sufficient evidence to create a genuine dispute of material fact on this issue.  Plaintiffs have not suggested that the individual Defendants were not qualified to work at Maynard or that Maynard should have known they were unqualified and not hired them accordingly.  Even if Plaintiffs had furnished some evidence showing Maynard negligently hired the individual Defendants, they have not submitted any sufficient evidence showing that such an affirmative act "materially contributed" to Plaintiffs' harms as opposed to the peer-to-peer bullying itself.

As to allegations in Count IV that Defendants did not "adequately investigate and remedy violations once reported to them," the Court declines to exercise jurisdiction over this narrowed negligence claim because (1) it is a state law claim over which this Court possesses only supplemental jurisdiction, (2) it involves traditionally local matters surrounding the governance of the public schools arising from a statute not heavily litigated, and (3) Defendants asked the Court to decline to assert supplemental jurisdiction over the remaining state law claims.  Doc. No. 57 at 12 n.3 (describing that "[b]ecause Plaintiff[s'] federal claims fail, this Court should dismiss plaintiffs' remaining state law claims due to lack of subject matter jurisdiction.").  Plaintiffs did not respond to this last argument or provide any reason why the Court should exercise jurisdiction over the remaining state law claims.  For the reasons described then, the Court declines to exercise jurisdiction over the negligence claim as it relates to the investigations.  See 28 U.S.C. § 1367(c)(3); Rodriguez, 57 F.3d at 1177 (describing that "the exercise of supplemental jurisdiction in such circumstances is wholly discretionary . . . [and] the district court . . . will have to assess the totality of the attendant circumstances.").  Accordingly,

---

Court concludes that even drawing all reasonable inferences in Plaintiffs' favor, there is no genuine dispute of material fact as to this issue.

Maynard's Motion for Summary Judgment (Doc. No. 56) is ALLOWED as to Count IV except

insofar as it alleges negligence regarding the investigations which the Court REMANDS

WITHOUT PREJUDICE to the Commonwealth of Massachusetts Superior Court.[12]

In Count V, Plaintiffs claim that Defendants (1) failed to prevent harm resulting from

peer-to-peer bullying and (2) directly participated in the cause of harm.  The first argument is

"barred by § 10 (j) because [it] originate[s] from a failure to act rather than an affirmative act."

Cormier v. City of Lynn, 479 Mass. 35, 41 (2018).  Although the MTCA further provides that

the § 10 (j) immunity does not apply to situations where the "intervention of a public employee .

. . causes injury to the victim or places the victim in a worse position than he was in before the

intervention," Mass. Gen. Laws ch. 258, § 10(j)(2), "the intervention must [still] be based on an

affirmative act, not a failure to act."  Roy v. Town of Winchendon, No. 21-P-368, 2022 WL

433223, at *3 (Mass. App. Ct. Feb. 14, 2022) (citing Sudbury Regional High Sch. Dist., 93

Mass. App. Ct. 243, 249 (2018)).  Here, Plaintiffs allege a failure to act by school officials, who

allegedly ignored Plaintiffs' complaints of bullying and failed to prevent such bullying.

Although Plaintiffs assert in a conclusory fashion that Defendants intervened, they have not

identified the intervention(s) or offered sufficient evidence that it placed Doe Child in a worse

position, even drawing all reasonable inferences in their favor.  See Doe v. Town of Stoughton,

---

[12] The Court's remand decision is further informed by the conclusion that remand creates no
statute of limitations issue adverse to Plaintiffs.  Remand results in a continuation of the original
action as the negligence claim as to the investigations was included in Plaintiffs' Complaint in
state court before Defendants removed this case to federal court.  Doc. No. 1.  Even if refiling is
required, the Court understands as a general proposition that the relevant statutory period tolls
while the case proceeds in federal court such that the Court's decision to decline to exercise
supplemental jurisdiction on this narrow claim against Maynard will not preclude further timely
proceedings in state court on this claim.  See 28 U.S.C. § 1367(d); Artis v. D.C., 138 S. Ct. 594,
596 (2018) (describing that § 1367(d) tolls the statutory period on supplemental state court
claims while the federal suit is pending and for thirty days after dismissal).

No. 1:17-CV-12337-IT, 2020 WL 4431569, at *4 (D. Mass. July 31, 2020) (internal quotation marks omitted) ("to be successful a claimant must show some involvement of a public employee in creating the injury-causing scenario, not simply a failure to respond adequately after it arises" and that "Courts further require plaintiffs to establish that the negligent act materially contributed to creating the specific 'condition or situation' that resulted in the harm.").

As to the second argument that Defendants participated in the cause of the harm, to avoid immunity under § 10(j) Plaintiffs must show that the affirmative acts "materially contributed to creating the specific condition or situation that resulted in the harm," or that they were the original cause of the harm.  Pettengill, 584 F. Supp. 2d at 366.  This Plaintiffs have not done, even drawing all reasonable inferences in their favor.  The factual allegations show, at most, peer-to-peer bullying that Maynard failed to prevent.  Even if "some actions by the public defendants contributed indirectly to [Doe Child's] injuries," they are "too remote as a matter of law to be the original cause" of Doe Child's harms under § 10 (j).  Cormier, 479 Mass. at 41.  Accordingly, Maynard's Motion for Summary Judgment (Doc. No. 56) is ALLOWED as to Count V.

D.  Count VI

In Count VI, Plaintiffs allege that Defendants "through acts and omissions, both intentional and negligent, have inflicted Plaintiff Doe Child with emotional distress[.]"  Doc. No. 1-2 ¶ 77.  Insofar as this claim alleges intentional infliction of emotional distress, Maynard as a municipality is immune from allegations of intentional torts under the MTCA.  Mass. Gen. Laws ch. 258, § 10(c) (describing that the MTCA does not apply to claims against public employers "arising out of an intentional tort" including "intentional mental distress"); Spring v. Geriatric

Auth. of Holyoke, 394 Mass. 274, 284 (1985).  Accordingly, Maynard's Motion for Summary

Judgment (Doc. No. 56) is ALLOWED on the intentional infliction of emotional distress claim.

That leaves the claim for negligent infliction of emotional distress ("NIED") against

Maynard.  The elements of this claim include: "(1) negligence; (2) emotional distress; (3)

causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable

person would have suffered emotional distress under the circumstances of the case."  McGrath v.

Town of Sandwich, 22 F. Supp. 3d 58, 70 (D. Mass. 2014).  To begin, Jane Doe and John Doe

are not able to recover under the NIED claim because they have not met the proximity

requirement, and Plaintiffs do not dispute or address this argument in any way.[13]  Thomas v.

Town of Chelmsford, 267 F. Supp. 3d 279, 314 (D. Mass. 2017) (internal quotation marks

omitted) ("Massachusetts law does not require that a relative claiming negligent infliction of

emotional distress was at the scene of the harm to a family member, but it does require that the

shock follow[] closely on the heels of the accident and this requirement is strictly applied.").

As to Doe Child's NIED claim, Plaintiffs describe that the underlying acts include: "in-

school bullying, the failure of Defendants to protect the child from . . . that bullying, [and] . . .

Holly . . . publicly sham[ing] and humiliat[ing] [Doe Child] in her second grade class."  Doc. No.

69 at 23-24.  Even drawing all reasonable inferences in Plaintiffs' favor, this NIED claim fails

for two reasons.  First, allegations that Holly read aloud Jane Doe's email to the class thereby

embarrassing Doe Child are not viable because there is no admissible evidence establishing that

Holly engaged in these actions as discussed infra.  Second, Plaintiffs' allegations of in-school

bullying by peers or that Maynard failed to protect Doe Child from bullying are not viable under

---

[13] Moreover, like Doe Child's NIED claim discussed infra, Jane and John Doe's NIED claim is
barred by the MTCA insofar as the claim alleges a failure to act.

the MTCA.  As discussed in detail <u>supra</u>, § 10(j) immunizes public employers "from 'any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer.'"  <u>Pettengill</u>, 584 F. Supp. 2d at 366.  Plaintiffs' allegations that Maynard failed to protect Doe Child and that third parties engaged in bullying[14] do not constitute affirmative acts, and even if they did, Plaintiffs have not shown that they "materially contributed" to Doe Child's harms as the original cause.  <u>Id.</u> (quoting Mass. Gen. Laws ch. 258, § 10(j)).  Accordingly, the Court ALLOWS Maynard's Motion for Summary Judgment (Doc. No. 56) as to Count VI.

     E.  <u>Count VII</u>

In Count VII, Plaintiffs allege that Defendants are "liable for the defamation of Plaintiffs Doe Child and Mother Doe."  Doc. No. 1-2 ¶ 83.  As described <u>supra</u>, municipalities are immune from intentional torts, <u>Spring</u>, 394 Mass. at 284, and that includes claims like defamation.  Mass. Gen. Laws ch. 258, § 10(c) ("including . . . libel, slander"); <u>Barrows v. Wareham Fire Dist.</u>, 82 Mass. App. Ct. 623, 626 (2012) (finding that a public employer was immune from defamation claims under the MTCA).   Therefore, Maynard's Motion for Summary Judgment (Doc. No. 56) is ALLOWED as to Count VII.

---

[14] Allegations of in-school bullying also do not meet the causation element of the NIED claim because those actions were conducted by third parties, such as other peers, and accordingly cannot be attributed to Maynard's conduct.

IV.   <u>INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 58)</u>

A. <u>Counts I and II</u>

For the reasons described <u>supra</u> in the analysis of Maynard's Motion for Summary Judgment (Doc. No. 56), Counts I and II are dismissed as waived.

B. <u>Count III</u>

In Count III, Plaintiffs argue that Defendants "violated Plaintiffs' rights under the Massachusetts Constitution, and the Massachusetts Civil Rights Act . . . by threats, intimidation or coercion" or attempts to do so and denied her "the right to education" in violation of the Massachusetts statute prohibiting discrimination in education, Mass. Gen. Laws ch. 76, § 5. Doc. No. 1-2 at 9.  As to the first argument, the MCRA requires that Defendants interfered or attempted to interfere with Plaintiffs' rights by "threats, intimidation or coercion."  Mass. Gen. Laws ch. 12, § 11H.  The individual Defendants argue that there is no evidence they engaged in "threats, intimidation or coercion" or attempts to do so.  Doc. No. 59 at 10-11.  Plaintiffs do not respond to this argument in their Opposition (Doc. No. 68), and even drawing all reasonable inferences in their favor, they put forth no evidence that sufficiently demonstrates that Defendants engaged in such actions.  Plaintiffs' facts suggest, at most, that the individual Defendants ignored complaints of bullying made by Doe Child and found fault in Doe Child by believing she was the aggressor of peer-to-peer bullying.  But this alleged "bullying" by the individual Defendants does not show "threats, intimidation or coercion."  <u>Id.</u>  Even more, the Massachusetts Supreme Judicial Court has said that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]" especially if there was no further purpose other than the violation itself.  <u>Longval v. Comm'r of</u>

Correction, 404 Mass. 325, 333 (1989).  This means that even if there were considerable facts demonstrating the individual Defendants "bullied" Doe Child (and there is not), that violation of Doe Child's rights by itself does not involve threats, intimidation, or coercion, and Plaintiffs have not sufficiently argued a further purpose other than the violation itself.

In addition, the individual Defendants enjoy qualified immunity for the reasons described in their motion, Doc. No. 59 at 5-8, 11, namely that even drawing all inferences in Plaintiffs' favor, no reasonable jury could conclude that the individual Defendants violated clearly established law.   See Duarte v. Healy, 405 Mass. 43, 46 (1989) (adopting the standard of immunity under 42 U.S.C. § 1983 for the MCRA). At most Plaintiffs identify a series of individual instances of "bullying" by other second graders disregarded or misapprehended by school officials.

As to Plaintiffs' claim under the Massachusetts statute prohibiting discrimination in education, the claim suffers from the lack of exhaustion noted earlier by failing to make an application, or sufficiently demonstrating that they did, to the Maynard School Committee as discussed supra.  Therefore, the Court ALLOWS the individual Defendants' Motion for Summary Judgment (Doc. No. 58) as to Count III.

      C.   Counts IV and V

Plaintiffs allege claims of negligence in Counts IV and V.  The MTCA provides that "no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258, § 2.  It follows that the individual Defendants can only be liable for claims of negligence under the MTCA if they acted outside the scope of their employment.  Doe v. Bradshaw, No. CIV.A. 11-11593-

DPW, 2013 WL 5236110, at *13 (D. Mass. Sept. 16, 2013).  Neither the Complaint (Doc. No. 1-2) nor Opposition (Doc. No. 68) make such allegations.  Accordingly, the individual Defendants' Motion for Summary Judgment (Doc. No. 58) is ALLOWED as to Counts IV and V on the basis of immunity.

   D. <u>Count VI</u>

  In Count VI, Plaintiffs allege that Defendants "through acts and omissions, both intentional and negligent, have inflicted Plaintiff Doe Child with emotional distress[.]"  Doc. No. 1-2 ¶ 77.  Insofar as this claim alleges negligent infliction of emotional distress, the individual Defendants are immune from such allegations since Plaintiffs have not argued that they acted outside the scope of their employment.  <u>See supra</u>.

  That leaves the intentional infliction of emotional distress claim.  To make out such a claim, Plaintiffs are required to show "(1) that [the individual Defendants] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe."  <u>Polay v. McMahon</u>, 468 Mass. 379, 385 (2014).  "The standard for making a claim of intentional infliction of emotional distress is very high."  <u>Id.</u> (quoting <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996)).  "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Id.</u> (quoting <u>Roman v. Trustees of Tufts College</u>, 461 Mass. 707, 718 (2012)).

  Plaintiffs describe that the conduct included "in-school bullying [and] the failure of Defendants to protect the child from the effects of that bullying" with specific allegations against Holly.  Even drawing all reasonable inferences in favor of Plaintiffs as the non-moving party, the

18

conduct as described in the record before the Court (or for that matter alleged in the Complaint) comes nowhere near the threshold of "extreme and outrageous."  The peer-to-peer "bullying" by second grade students, whether being called "meanie" or some physical incidents, the alleged failure of school officials to prevent such bullying, or even the officials engaging in conduct that Plaintiffs subjectively disapprove of does not rise to the level of "extreme and outrageous."  Id. (internal quotation marks omitted) ("Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities[.]").  There is no evidence sufficient to support the inference or conclusion of, for example, persistent organized targeting of Doe Child by a single student or group of students ignored by the school officials or physical incidents rising even close to the level of extreme or outrageous in the context of the second-grade setting.  Thus, the individual Defendants' Motion for Summary Judgment (Doc. No. 58) is ALLOWED as to Count VI.

   E. Count VII

   In Count VII, Plaintiffs allege a defamation claim against Defendants by arguing that "Ms. Holly . . . publicly shamed and humiliated Doe Child in her second grade class . . . through [her] affirmative, bullying act of reading out loud Mother Doe's email to the entire class, belittling the child's mother . . . and deriding her in very strong and defamatory language[.]" Doc. No. 1-2 ¶ 84.  Before proceeding in its analysis, the Court ALLOWS the individual Defendants' Motion for Summary Judgment (Doc. No. 58) as to the remaining individuals of Deborah Bresnick, Donna Dankner, and Robert J. Gerardi because the Complaint on its face only describes allegedly defamatory actions by Holly.  Id. ¶¶ 82-89.

   Turning to the merits, "to state a claim of defamation a plaintiff must allege facts indicating that (1) the defendant published a false statement regarding the plaintiff—that is, the

defendant communicated the statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; and (3) the statement caused economic loss or is otherwise actionable without proof of economic loss."  Flagg v. AliMed, Inc., 466 Mass. 23, 37 (2013).

Defendants contend that Holly never read the email at issue aloud in class or made any disparaging remarks about Plaintiffs.  Doc. No. 60 ¶¶ 62-64.  There is a serious question as to whether Plaintiffs have admissible evidence to contradict that contention and to prove that Holly did in fact read the email aloud in class.  Even if the Court recognized this issue as a disputed fact for purposes of summary judgment (i.e., that Plaintiff has submitted sufficient admissible evidence that Holly did read the email to the class), two issues remain with Plaintiffs' claim. First, the email itself does not contain any false or defamatory statements as it was written by Jane Doe herself, and Plaintiffs agree that the statements contained in the email are true.  Id. ¶ 66; see Noonan v. Staples, Inc., 707 F. Supp. 2d 85, 90 (D. Mass. 2010) (explaining that truth is an absolute defense to defamation under Massachusetts law).  Second, the only evidence Holly derided Plaintiffs to the class before or after reading the email is from Doe Child's affidavit, which the Court strikes for the reasons discussed infra.  In any event, those statements are opinion statements and the reputation of the Does in the "community" is not at issue by this alleged statement made to second graders.  Accordingly, the Court ALLOWS the individual Defendants' Motion for Summary Judgment (Doc. No. 58) as to Count VII.

V.    DEFENDANTS' MOTION TO STRIKE AFFIDAVIT (DOC. NO. 77)

In Opposition to Defendants' Motions for Summary Judgment (Doc. Nos. 56, 58), Doe Child submitted an affidavit dated October 11, 2021.  Doc. No. 74.  Defendants move to strike this affidavit, in their Reply (Doc. No. 77) in a filing labeled as both a Reply and Motion to

Strike. Defendants so move for several reasons: (1) it is unclear whether the affidavit is signed or unsigned because of scratch marks where the signature typically is; (2) it contains allegations not made from personal knowledge by reciting "conduct that did not take place in [Doe Child's] presence" and describes allegations of "her parents' purported thoughts or actions or those of other adults"; and (3) Doe Child is attesting to facts that occurred years ago while she was likely between the ages of six to eight which may call into question whether she "appreciates the meaning of an oath, the obligation of truthfulness, or that [she] is free from parental influence." Doc. No. 77 at 5-6.

The Court agrees and STRIKES Doe Child's affidavit.  Fed. R. Civ. P. 56(c)(4) describes that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.  (emphasis added).  Plaintiffs bear the burden to establish that their evidence is admissible.  This they have not done.

First, Plaintiffs have not demonstrated that Doe Child signed the affidavit.  The affidavit contains various markings that appear in the nature of cross-outs rather than the signature of a now thirteen-year-old, whether in the form of a name or a scrawled signature.  Second, meaningful portions of the affidavit are patently not based on personal knowledge.  Third, the affidavit is not accompanied by any kind of attestation or other support showing that "the affiant . . . is competent to testify on the matters stated."  See id.  The affidavit is dated in late 2021, and the underlying events occurred largely in 2016-2017, nearly four to five years prior when Doe Child was in the second grade.  Plaintiffs have not shown that Doe Child now appreciates the meaning and consequences of an oath, accurately recalls and can testify to the underlying events from when she was between six and eight years old, or is free from her parents' influence.

Finally, Plaintiffs have not responded to Defendants' Motion to Strike which was combined with their Reply or otherwise addressed the concerns about Doe Child's affidavit in any way.  For all the foregoing reasons, the Court ALLOWS Defendants' Motion (Doc. No. 77) and STRIKES Doe Child's affidavit (Doc. No. 74).

VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Court ALLOWS Maynard's Motion for Summary Judgment (Doc. No. 56) and the individual Defendants' Motion for Summary Judgment (Doc. No. 58) resulting in judgment in favor of all Defendants on all claims except as to Plaintiffs' claim against Maynard for negligence as to the investigations which is REMANDED WITHOUT PREJUDICE to the Commonwealth of Massachusetts Superior Court for lack of subject matter jurisdiction. Additionally, Defendants' Motion to Strike (Doc. No. 77) is ALLOWED.  A separate and final judgment will enter, and the Clerk shall close this case.[15]

SO ORDERED.

  /s/ Leo T. Sorokin

Leo T. Sorokin
United States District Judge

---

[15] The parties request a hearing on the summary judgment motions. Doc. Nos. 57, 59, 69. The Court denies this request after concluding that a hearing is unnecessary to resolve the claims at issue.